Michael E. Reznick, Pro Per (State Bar No. 116126)
283 Ocho Rios Way
Oak Park, California 91377
(818) 437-5630
reznagoura@aol.com

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: DA & AR HOSPICE CARE, INC., | BAP No.: CC-22-1128 |
| Debtor, | Bk. No.: 2:21-bk-19219-ER |
| MICHAEL E. REZNICK, | APPELLANT'S REPLY BRIEF |
| Appellant, | |
| v. | |
| U.S. TRUSTEE; YVETTE HARGROVE-BROWN, | |
| Appellees. | |

TO THE HONORABLE PANEL AND ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

Appellant respectfully submits his Reply Brief in support of his appeal of the Honorable Ernesto Robles' Jr.'s erroneous June 27, 2022 Order (the "Order" or "OSC"):

## **TABLE OF CONTENTS**

A. THE UNDISPUTED EVIDENCE IN THIS CASE ESTABLISHES THAT:

- APPELLANT WAS AUTHORIZED BY THE INDISPUTABLE MEDICAL DIRECTOR OF THE PROFESSIONAL MEDICAL CORPORATION DEBTOR HOSPICE ("DA") TO FILE THE BANKRUPTCY PETITION IN ORDER TO AVOID IMMINENT FINANCIAL COLLAPSE AND DISRUPTION OF CONTINUITY OF PATIENT CARE;

- THE TRUSTEE'S COMPLAINING WITNESS – AILENE RIVERA – HAD NO LEGAL AUTHORITY TO NEGATE THE AUTHORITY GIVEN TO APPELLANT BY DA'S MEDICAL DIRECTOR AS A MATTER OF LAW

B. THE APPEAL IS NOT MOOT NOR SUBJECT TO DISMISSAL FOR FAILING TO APPEAL THE DISCIPLINARY PANEL'S IMPOSITION OF DISCIPLINE

C. CONCLUSION

A. **THE UNDISPUTED EVIDENCE IN THIS CASE ESTABLISHES THAT :**

- **APPELLANT WAS AUTHORIZED BY THE INDISPUTABLE MEDICAL DIRECTOR OF THE PROFESSIONAL MEDICAL CORPORATION DEBTOR HOSPICE ("DA) TO FILE THE BANKRUPTCY PETITION IN ORDER TO AVOID IMMINENT FINANCIAL COLLAPSE AND DISRUPTION OF CONTINUITY OF PATIENT CARE;**

- **THE TRUSTEE'S COMPLAINING WITNESS – AILENE RIVERA – HAD NO LEGAL AUTHORITY TO NEGATE THE AUTHORITY GIVEN TO APPELLANT BY DA'S MEDICAL DIRECTOR AS A MATTER OF LAW**

While it is true that a "fraud" has been perpetrated on the bankruptcy court, it was not "fraud" committed by Appellant. The evidence is undisputed that:

- Jose De Lallana, M.D. ("Dr. De Lallana") was the indisputable "medical director" of and for DA & AR Hospice Care, Inc. ("DA" or the "Debtor") when Appellant signed and filed the bankruptcy petition and continued in that role and capacity until January 2023. (Appx. Ex. A);

- At the late October 2021 face to face meeting between Appellant and Dr. De Lallana, Dr. De La Lallana showed Appellant his plastic medical license card to confirm that he was and is in fact a licensed medical doctor (See "Third Supplemental Corrected Excerpts of Record") ("Appx. Supp.") (Ex. Y) (Declaration of Michael E. Reznick) ("Reznick Decl.") (Exhibit "N") with the attached exhibits, which were inadvertently omitted from Exhibit "N" when the original Excerpts were e-filed);

1

- Only a licensed medical doctor or other statutorily authorized licensed professional can legally own 50 percent or more of the shares of a professional medical corporation. See Corporations Code sections 13400 et seq. and in particular, section 13401.5.

- Dr. De La Lallana provided Appellant with a conformed copy of a "Statement of Information" ("SOI") filed with the Secretary of State that not only confirmed his authority as DA's "Medical Director," but also identified Dr. De La Lallana as DA's "Chief Executive Officer," "Secretary," "Chief Financial Officer" and the sole "Director." (Appx., Ex. C);

- There was and is nothing on the face of the SOI or otherwise to suggest that the SOI is or was "fraudulent" when Dr. De La Lallana authorized Appellant to file the Petition in the face to face meeting with Appellant in October 2021;

- The only "evidence" that the SOI (Appx., Ex. C) was or is "fraudulent" was the conclusory statement provided by Rivera (without any other support) that the SOI was "fraudulent";

- As a matter of law Rivera and her two accomplices cannot "hold" or "own" 50 percent, 25 percent and 25 percent, respectively, of a medical corporation or hospice like DA. See Corporations Code sections 13401, 13401.3, 13401.5. (A licensed "physical therapist," like the United States Trustee's ("UST") complaining witness, Ailene Rivera ("Rivera"), may be "shareholders" of a professional medical corporation but only if "the sum of all shares owned by those licensed persons does not exceed 49 percent of the total number of shares of the professional [medical] corporation so designated [in section 13401.5], and so long as the number of *those* licensed persons owning shares in the professional corporation . . . does not exceed the number of those licensed persons licensed by the

2

governmental agency regulating the designated professional") [Namely, the Board of Medical Quality Assurance ("BMQA") in Dr. De La La Lallana's case);

- Ailene Rivera ("Rivera"), the United States Trustee's ("UST") complaining witness, is and was a licensed physical therapist by trade, not a medical doctor, and thus was not and is not a statutorily permitted 50 percent or more owner of a medical corporation or hospice like DA;

- Assuming, arguendo, that Rivera was an ostensible or de facto officer or director or shareholder of the Debtor, she would not have had the right or overriding authority to negate the "authority" Dr. De La Lallana gave Appellant with respect to filing the Petition. (Appx., Ex. H; see Corporations Code sections 13401, 13401.3, 13401.5);

- As a matter of law Rivera could not own or hold "50 percent" of the shares of a medical corporation or hospice like DA when Dr. De La Lallana authorized Appellant to file the Petition. (Id.);

- As a matter of law, Rivera's two purported lay person co-shareholders could not own or "hold" the remaining 50 percent of the shares of a medical corporation or hospice like DA when Dr. De La Lallana authorized Appellant to file the Petition. (Id.);

- As the sole "Director" of DA, as confirmed by the SOI that he provided to Appellant (Appx., Ex. C), Dr. De La La Lallana was authorized to "authorize" Appellant to file the Petition in October 2021;

- As the sole "Director" of DA, Dr. De La Lallana did not need to provide Appellant with a corporate "resolution" authorizing the filing of the Petition (Appx., Ex. C);

- A "Special Litigation Committee" ("SLC") was formed in or about September 2021 by the creditor-controlled boards of directors of Noble Quest Health Foundation and its

3

related medical corporations, including DA, to investigate claims of embezzlement and misconduct by Rivera and others. (Appx., Ex. I, Reznick Decl.);

- The SLC placed Rivera on paid administrative leave and relieved her of all of her administrative duties and responsibilities for Noble Quest and all of the related medical corporations, including DA (Id.);

- Appellant was aware that Rivera was accused of embezzlement and misconduct with respect to DA and was relieved of her duties and responsibilities as a result thereof was placed on paid administrative leave by virtue of attending the SLC's September 2021 meeting by phone, as well as from participating in privileged communications he had with Dr. De Lallana and others in order to prepare the State Court Complaint in the action against Rivera and others captioned *Jose De Lallana, MD, et al. v. Ailene Rivera, et al.*, Los Angeles Superior Court Case No. 21 STCV39991 (the State Court Complaint) (Appx., Ex. D);

- At the time the Petition was filed, the objective and reasonable facts that Appellant was aware of and that were readily available to him established that there was nobody within the DA organization at the time who was vested with more authority than Dr. De La Lallana to authorize Appellant to file the Petition.

- The Articles of Incorporation of DA (Appx., Ex. E) that Rivera submitted as "evidence" of her alleged "50 percent" share ownership are invalid and defective on their face as a matter of law because the Articles do not include the following mandatory statutory language:

4

- o   The articles of incorporation of a professional corporation *shall* contain a specific statement that the corporation is a professional corporation within the meaning of this part....."

(Corporations Code section 13404) (Emphasis Added).

- If the Articles of Incorporation had included the required statutory language, and in particular, the restrictions with respect to who can own or hold stock, it may have alerted the Bankruptcy Court and presumably the UST of the patent falsity of Rivera's claim under penalty of perjury on January 26, 2022 – three months after Dr. De La Lallana gave Appellant authority to file the Petition - that she was (and is) "[a]s to DA & AR Hospice, Inc. (sic) (she omits the word "Care" after the word "Hospice") the current President/CEO and a 50% shareholder. Rosalie Manuel and Paul Laurel each own 25% interest in the Company. I have held this position and ownership since May 2020." (Appx., Ex. H) (Rivera's initial declaration in support of her motion to dismiss) at 2:7-11).

- In a subsequent unverified "Omnibus" pleading, Rivera describes an elaborate transaction whereby she and her accomplices allegedly ended up owning their alleged shareholder interests by acquiring them from DA's original "incorporator" whom she claims then owned 100 percent (Appx., Ex. J at 2:1-16).

- As a matter of law, Rivera could not own or hold 50 percent of DA, and her lay person accomplices could not own or hold the remaining 50 percent. (See discussion above regarding Corporations Code sections 34000 et seq.);

- Rivera, her accomplices and the UST did not provide any share certificates, shareholder agreements or anything else to establish their alleged ownership of 100 percent of DA's

5

outstanding shares or stock. To the extent that Rivera and her accomplices actually received or currently hold 50 percent, 25 percent and 25 percent, respectively of DA's 100,000 shares of "authorized" common stock pursuant to a stock purchase agreement or any other similar transaction, the agreement would be unenforceable as an illegal contract void against public policy since it would run afoul of Corporations Code sections 13400 et seq. See California Civil Code 1596.

- The *only* evidence Rivera and the UST provided to establish her share ownership of and the shares "held" by her purported two co-shareholders was by their "declarations" - which as stated above were patently false or obtained pursuant to a transaction that could not be enforced;

- The Articles of Incorporation state only that DA is "authorized" to issue 100,000 shares of its common stock. The Articles are silent about whether such stock was in fact 'issued' by or to the original incorporator or anyone else. (Appx., Ex. E);

- No evidence was presented by the UST that DA actually issued shares to Rivera or any of her accomplices;

- Rivera's accomplices subsequently disclaimed any interest in DA in the interpleader action filed by Chase in or about June 2022, presumably because they were aware of the illegality of their alleged ownership claim and/or of Rivera's questionable claims of ownership (Appx., Exs. O, P, Q and R);

- The *only* evidence Rivera and the UST provided to establish her share ownership of Rivera and the shares "held" by her purported two co-shareholders was by their "declarations" only - which as stated above were patently false because DA never issued nor had any outstanding shares according to its filed Articles of Incorporation;

6

- James Dumas, Esq. ("Dumas"), Appellant's opposing counsel of record in an entirely unrelated case set for trial in the Fall of 2023 in Marin County, California against Dumas's clients for sexual abuse against four minors in a case captioned *John Doe 704 v. Lori Grace*, et al, participated in the proceedings against Appellant, aided and abetted Rivera and the UST and filed a patently false "friend of the court" brief that was nothing short of a character assassination against Appellant [See Docket]. The clear purpose of Dumas's filing was for the purpose of gaining an advantage in the unrelated civil sexual abuse action against Dumas's clients (i.e., to ensure that any discipline imposed might bring with it a State Bar investigation or proceeding to eliminate Appellant as his adversary). Dumas's actions run afoul of both the letter and spirit of Rule 7-104 of the Rules of Professional Conduct (patterned after the ABA's Model Rule). ("A member of the State Bar shall not threaten to present criminal, administrative or disciplinary charges to obtain an advantage in a civil action. Nor should he present or participate in presenting criminal, administrative or disciplinary charges solely to obtain an advantage in a civil matter."). At the very least, Dumas's friend of the court brief constituted "participation" in presenting "administrative or disciplinary charges" in support of the UST's application for the OSC. More importantly, however, Judge Robles's consideration of the Dumas brief in any respect over Appellant's strenuous objection and motion to strike constituted another example of his abuse of discretion;
- Rivera's attorneys, under the guise of "representing DA," have pulled the same "stunt" as Dumas in the BAP proceeding by filing a brief on behalf of DA, without permission from the BAP, for the purpose of manipulating this Court into ruling that Rivera was the only one who could have authorized the filing of the Petition to gain an advantage in the State

7

- Court Action - where Rivera's claims of ownership will likely be dismissed by the Court without more as a matter of law. The BAP wisely rejected this attempt by issuing an order that invited briefing on the impropriety of Rivera's attorney's action. The matter is still pending at this time;
- Rivera's acknowledgment that she was "affiliated" with DA and the other medical corporations that Dr. De La Lallana informed Appellant he was the Medical Director, owner and CEO of is circumstantial evidence that DA is in fact "related" to the medical corporations that Appellant does have a written retainer agreement for, thereby negating the UST's complaint that there is "no evidence" that the retainer agreement (Appx., Ex. B) was also intended by the parties to include DA within the scope of Appellant's representation;
- ***The UST supported Rivera's and her accomplices' asserted ownership claims with their declarations only – no stock certificates, stock purchase agreements or any other documentary evidence was presented to establish their purported share ownership. And if any such documentary evidence did exist it would not be enforceable as void against public policy or illegal.*** See Civil Code section 1596.
- The declarations that the UST and Bankruptcy Court relied on were squarely refuted and contradicted by DA's filed Articles of Incorporation (Ex. E). Among other things, the Articles confirm on their face that they are invalid because the following mandatory statutory language restricting majority share ownership to licensed professionals (and in this case, a licensed medical doctor):

8

- The articles of incorporation of a professional corporation ***shall*** contain a specific statement that the corporation is a professional corporation within the meaning of this part….."

- As a result, Rivera's declaration (and the declarations filed by Rivera's other two purported lay person "owners" of DA who claim to "hold" collectively 100 percent of DA's stock or shares) are patently false, not credible and incompetent as a matter of law;

- The UST did not establish nor present any evidence that the conformed copy of the Statement of Information" ("SOI") that was filed on October 22, 2021 with the California Secretary of State, which identifies Dr. De Lallana as DA's Chief Executive Officer, Secretary, Chief Financial Officer and sole Director, was "fraudulent" in any respect beyond the conclusory statement in Rivera's declaration that the SOI was or is "fraudulent";

- DA is in fact related to or "affiliated with" Care Plus (Appx., Ex. H);

- Chase had frozen all of the bank accounts of DA and its related medical corporations at the time Dr. De La Lallana met Appellant in October 2021 and authorized him to file the Petition because of Rivera's disputed, contentious and legally meritless claims;   -

- Chase's action to freeze and block access to DA's bank accounts rendered DA insolvent at the time that Dr. De Lallana - DA's undisputed "Medical Director" from 2019 until January 2023 (Appx., Ex. A), and its ostensible sole "Director," Chief Executive Officer, President and Secretary - met with Appellant in October 2021 and authorized Reznick to file the petition, as confirmed by Dr. De La Lallana's testimony and the SOI (Appx., Ex. A);

9

- Dr. De La Lallana authorized Appellant to file the Petition if necessary in October 2021 (Reznick Declaration) (Appx., Ex. "N");

- Dr. De La Lallana and Appellant had no alternative but to file the Petition so that Dr. De Lallana could continue to provide continuity of the hospice's patient's care. Without the protection of the automatic stay (11 USC section 362), DA could not operate its hospice in the ordinary course nor protect and care for the hospice patients;

- n the ordinary course;

- Dr. De Lallana was professionally and statutorily obligated to care for DA's patients and would have faced fallout from the authorities if he did not do so. As such, he was empowered and obligated to make professionally compliant decisions that provided for their health care, needs and welfare;

- In light of the frozen Chase accounts, which caused DA to suffer imminent insolvency under any definition, and the fact that Rivera, DA's ostensible "administrator," was under a cloud of suspicion for embezzlement, stealing DA's business records and had been relieved of her duties at the direction of the SLC since September 2021 (Appx., Ex. J), the only sound legal, medical and financial decision that Dr. De Lallana could make was to authorize Appellant to file a bankruptcy petition;

The foregoing undisputed facts were the facts available to Appellant and the facts that Appellant relied upon when he filed the Petition seeking protection for his client and its patients. Needless to say, Appellant's declaration is "self-serving," as suggested by the UST.

But Appellant is not and was not obligated to oppose the OSC by involving Dr. De La Lallana in his discipline matter, or disclosing claims, defenses, or confidential communications between himself and Dr. De La Lallana, whom Appellant represented individually and in his

10

capacity and role as an officer, director and the "Medical Director" of DA. No court of competent jurisdiction has ever determined or found that Appellant was not and is not still the attorney for Dr. De La Lallana, DA, Care Plus or even Noble Quest; No substitutions of attorney have been filed in the State Court Action; and the State Court judicial officer presiding over the State Court Action and the related Chase Interpleader action refused to grant Appellant's motion to withdraw as counsel of record for these parties. Accordingly, Appellant has never been relieved of duties he owes to his clients to maintain their privileges and confidences. While the UST makes light of Appellant's privilege claims, and inquires about what privileged information exists, the fact of the matter is that disclosing privileged communications and work product in opposition to the OSC would have waived the attorney-client privilege and work product of the clients, who hold the privilege and never authorized Appellant to waive it. Needless to say, this would have exposed Appellant to serious legal malpractice claims. This is nothing for the UST to make light of. (See further discussion in Appellant's Opening Brief).

Not only was Dr. De Lallana authorized to make the decision to file bankruptcy and to authorize Appellant to do so under the emergency conditions and crisis that DA and its patients were facing, there was nobody else with greater authority than Dr. De Lallana to do so. Among other things, Rivera was on paid administrative leave and to Appellant's and Dr. De Lallana's knowledge, was looting the company. What is clear from the evidence, however, that there was nobody who could properly negate the authority Dr. De Lallana had given Appellant.

Moreover, when the creditor-controlled board of directors approved the SLC and placed Rivera on leave (Appx., Ex. J), the Board also delegated all patient care and hospice management to Dr. De Lallana and Yvette Hargrove Brown, the related companies' newly installed "Global Administrator" whose actions were supervised by Dr. De Lallana.

11

The only legally sound decision De Lallana could credibly and reasonably make was to authorize Appellant to file the Petition for bankruptcy protection if it became necessary - and Chase Bank's freezing of DA's accounts not only made the filing of bankruptcy if necessary, but imperative for continued patient care. Simply stated, filing bankruptcy was the only logical, sound, medically and legally available path available and medically and legally necessary means to protect the patients from certain harm.

Finally, far from committing a "fraud" on the Bankruptcy Court, Dr. De Lallana and Appellant actually sought the protection of the Court to protect continuity of patient care and attempted to embrace the UST, not oppose her. As set forth in Appellants' initial email to the UST (Supp. Appx., Ex. "Y"), Appellant requested the appointment of a "Medical Ombudsman," provided the UST with a history of the ongoing dispute between the parties, enclosed the detailed State Court Action Complaint (Appx., Ex. D) and detailed as much information as Appellant had available at the time of his email that was not privileged or work product. The UST ignored all of the evidence provided by Appellant, not to mention the public record (Appx., Ex. A), choosing instead to rely solely on the incompetent declaration from a physical therapist who was not authorized to act on behalf of the Debtor, nor negate the authority Dr. De La Lallana had given to Appellant in October 2021 to file bankruptcy if necessary, as a matter of law. Contrary to the UST's assertions, filing the Petition was the one act performed by Appellant (at the direction and insistence of DA's "Medical Director," "Director," and "CEO") that was actually consistent with patient care. Not filing the bankruptcy would have been tantamount to medical and legal malpractice.

Dr. De Lallana also authorized Appellant to file the State Court Action against Rivera and others on behalf of DA, Care Plus and as an individual to recover whatever Rivera had embezzled during her tenure.

## B. THE APPEAL IS NOT MOOT NOR SUBJECT TO DISMISSAL FOR FAILING TO APPEAL THE DISCIPLINARY PANEL'S IMPOSITION OF DISCIPLINE

Contrary to the UST's assertion, the appeal is not "moot" for failure to appeal the discipline imposed by the Disciplinary Panel ("DP"). The recommended discipline was based on a clearly erroneous order. There would have been no DP nor discipline imposed in any respect but for the Bankruptcy Court's errors of law and fact and abuse of discretion in applying the law to facts that were essentially undisputed. The DP and discipline imposed are ancillary to the appealed order and not essential in any respect for the BAP's resolution.

## C. CONCLUSION

The upshot of Judge Robles's clearly erroneous order and the UST's myopic and misguided presentation of evidence in support of her application for the OSC is that Rivera and her accomplices are now operating and controlling a medical corporation – a hospice no less – without the legal or statutory ability to do so. This Court cannot countenance such a miscarriage of justice and must reverse Judge Robles's clearly erroneous and legally and factually flawed order in its entirety, or vacate the order and remand the matter to Judge Robles for a full and fair evidentiary hearing on the issues presented.

DATED: June 8, 2023  /s/ Michael E. Reznick
MICHAEL E. REZNICK, Appellant

13

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2023, I electronically filed the foregoing document entitled:

**APPELLANT'S REPLY BRIEF; THIRD CORRECTED EXCERPTS OF RECORD OR APPENDIX IN SUPPORT OF OPENING AND REPLY BRIEF** with the Clerk of the Court for the Bankruptcy Appellate Panel for the Ninth Circuit by using the CM/ECF system.

I certify that all parties of record to this appeal either are registered CM/ECF users, or have registered for electronic notice, or have consented in writing to electronic service, and that service will be accomplished through the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and United States of America that the foregoing is true and correct.

Executed on June 8, 2023 at Oak Park, California.


/s/ Michael E. Reznick
   Michael E. Reznick